NOT DESIGNATED FOR PUBLICATION

No. 127,948

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of B.S.,
a Minor Child.

MEMORANDUM OPINION

Appeal from Rooks District Court; KEVIN BERENS, judge. Submitted without oral argument. Opinion filed June 13, 2025. Affirmed.

*Scott D. Wright*, of Beloit, for appellant natural father.

*Robert A. Walsh*, of Concordia, for appellee natural mother.

Before MALONE, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM:   The natural father (Father) of B.S. (born in 2019) timely appeals the district court's finding that B.S. was a child in need of care, suggesting B.S. was not in need of care because the natural mother (Mother) provided for all his needs. Father also appeals the district court's finding of unfitness and termination of his parental rights, arguing the district court's finding of unfitness was not supported by clear and convincing evidence and the district court abused its discretion in terminating his parental rights in the best interests of B.S. After a thorough review of the record, we find no error by the district court, and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2022, Mother filed a petition to terminate the parental rights of Father. Mother asserted that B.S. resided with her because Father was incarcerated and

1

had failed to maintain regular visitation, contact, or communication with her or the child. Mother also asserted Father failed to provide financial support, abandoned and emotionally neglected B.S., and failed to provide the care and control necessary for the child's physical, mental, or emotional health. Mother asserted it was unlikely Father's current condition or circumstances would change in the foreseeable future.

At an adjudication and termination of parental rights hearing in November 2023, the district court heard testimony from Mother, Mother's fiancé, maternal grandmother, Father, and paternal grandfather. At the end of the hearing, the district court took the matter under advisement and ultimately found, with respect to Father, B.S. was a child in need of care as he was without the care or control necessary for his physical, mental, or emotional health, and Father had abandoned him.

The district court also took judicial notice of Father's convictions of aggravated indecent liberties with a child under 14 years old, electronic solicitation of a child under 14 years old, and rape. B.S. was not the victim of those crimes. But, based in part on those convictions, the district court found Father unfit by reason of conduct or condition rendering him unable to care properly for B.S. and the conduct or condition was unlikely to change in the foreseeable future. The district court explained Father's unfitness was based on more than just his incarceration: as Father had minimal contact with B.S.; had not provided any care or support for B.S. since B.S. was three weeks old; Father's convictions were felony convictions for sexually violent offenses, two of which involved children; and he was serving a sentence of life imprisonment with a mandatory minimum term of 25 years, plus two consecutive sentences of 186 months each. The district court terminated Father's parental rights in the best interests of B.S. B.S. remained in Mother's custody. Additional facts are set forth as necessary.

ANALYSIS

*B.S. is a child in need of care with respect to Father.*

Father argues Mother failed to establish by clear and convincing evidence B.S. was a child in need of care because Mother provided B.S. with everything he needed, including food, clothing, and shelter. Father also suggests Mother prevented him from contacting B.S. and then filed a petition to terminate his parental rights based on the lack of contact.

A parent has a constitutionally recognized fundamental right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). The district court must find clear and convincing evidence that a child under 18 years old is a child in need of care. See K.S.A. 2024 Supp. 38-2202(d); K.S.A. 38-2250. Clear and convincing evidence is evidence that shows "the truth of the facts asserted is 'highly probable.'" *In re B.D.-Y.*, 286 Kan. at 695-96.

An appellate court reviews the district court's adjudication of a child in need of care by determining whether, after reviewing the evidence "'in the light most favorable to the party prevailing below,'" a rational fact-finder could have found it highly probable, by clear and convincing evidence, the child was a child in need of care. *In re N.D.G.*, 20 Kan. App. 2d 17, 20-21, 883 P.2d 89 (1994). The appellate court does not reweigh conflicting evidence, assess witness credibility, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

Here, the district court found B.S. a child in need of care under K.S.A. 2023 Supp, 38-2202(d)(2) and (d)(5). That is, B.S. was "without the care or control necessary for

3

[his] physical, mental or emotional health" and had "been abandoned or does not have a known living parent." K.S.A. 38-2202(d)(2), (d)(5).

The district court can find a child is a child in need of care based on "the conduct of the parent[] whose rights are [at] issue and not upon the conduct of the custodial parent or other person." *In re N.D.G.*, 20 Kan. App. 2d at 23-24. In *In re N.D.G.*, the adoptive father—who happened to be the mother's uncle—and the maternal grandmother—who was the principal physical custodian of the children—sought to sever the mother's parental rights rather than merely deny the mother custody or regulate the mother's visitation with the children. The panel found: "In the purest sense of the term, these children were not 'in need of care.'" 20 Kan. App. 2d at 23. Rather, the children were in stable and loving homes with the mother's uncle and the maternal grandmother and were not mistreated or deprived of the necessities of life. But the panel found "as the evidence developed, it became obvious that as to their mother, these children were, indeed, 'in need of care.'" 20 Kan. App. 2d at 23. The panel considered how the children were cared for and would continue to be cared for by their mother, explaining:

> "If the evidence indicates that the children have been and will be in need of care if the
> relationship with their mother continues, they may be said to be children in need of care
> as that term is used in the [Kansas Code for Care of Children, now the Revised Kansas
> Code for Care of Children, 38-2201 et seq.]." 20 Kan. App. 2d at 23.

Father attempts to distinguish *In re N.D.G.* from the circumstances here as that case dealt with an adoptive parent severing the parental rights of the natural parent. Regardless of the unusual familial circumstance, the *In re N.D.G.* panel held "that one parent may proceed against the other under the child in need of care statutes." 20 Kan. App. 2d at 23.

4

Father suggests the issue is one of custody, not termination of parental rights. *In re N.D.G.* addressed a similar argument, and the panel explained the issue was "considerably more serious than a custody dispute" as the children's best interests would be served by severing one parent's parental rights. 20 Kan. App. 2d at 21. Likewise, the issue here is considerably more serious than a custody dispute as Mother is trying to sever Father's parental rights, not merely deny Father custody or regulate his visitation with B.S.

Here, Mother has fed, clothed, and otherwise appropriately provided for B.S., who was not in need of care in the purest sense of the term. Father, on the other hand, has failed to provide the care or control necessary for B.S.'s physical, mental, or emotional health. Father was arrested when B.S. was three weeks old and is currently serving a life sentence with a mandatory minimum term of imprisonment of not less than 25 years, and two consecutive sentences of 186 months' imprisonment, for sexually violent crimes— two of which involved children.

Father has also failed to maintain regular contact with B.S. or Mother. Mother testified she was willing to let Father speak with B.S., except one time when Father spoke inappropriately to her. Mother then asked Father not to contact her *unless* it was about B.S. Father provided contradictory testimony that Mother told him not to contact her at all. At the time of the hearing in November 2023—when B.S. was about four years old— Mother had not heard from Father in nearly two years. Before that, Father sent B.S. a birthday card on his first birthday, made a few phone calls to Mother, and participated in one video call with B.S. before he was two years old. Father was frustrated with the video call because B.S. was too distracted and wanted to play.

Father has been absent from B.S.'s life, aside from sending the one birthday card and making a few phone calls. At the hearing, Father suggested his lack of contact was because he did not have Mother's contact information after he was arrested. Yet, Father

5

tried to call maternal grandmother from the county jail (maternal grandmother declined the collect call); called and spoke with Mother a few times from Hays Correctional Facility; and sent B.S. a birthday card to maternal grandmother's address where Mother and B.S. were living. Within six months of the hearing, Father began writing letters to B.S. and gave them to his attorney to ensure there was a paper trail of his efforts to communicate. Father admitted these letters and the birthday card were the only letters he sent to B.S. It appears from the record Father was essentially absent from his child's life until Mother filed the petition to terminate his parental rights, at which time Father began making minimal effort to have some contact.

Mother testified that, after Father's arrest, she had moved in with her parents, who were her sole providers because she could not afford to work and pay for childcare. Mother asked the district court in separate proceedings for a child support order, which Father contested, claiming he was incarcerated and could not provide financial assistance. The district court did not order Father to pay child support. Even though Father contested the request for a child support order, he alleged he was willing to pay child support without a court order but stated he only made $1.05 per hour. Father also alleged he financially supported B.S. before he was arrested but failed to acknowledge he was arrested when B.S. was only three weeks old. Father explained his house was foreclosed on when he was arrested and claimed he released Mother from any liability associated with the foreclosure, thus financially helping Mother and B.S. Father also claimed that Mother wiped out a joint checking account. Mother denied knowing anything about Father's financial troubles or a release of liability associated with the house. This evidence demonstrates that B.S. was without the care or control necessary for his physical, mental, and emotional health as it relates to Father.

Given the passage of time, Mother testified B.S. does not know Father as his father. Mother expressed concern about taking B.S. to visit Father in prison as it would only confuse B.S. Mother also had safety concerns based on Father's sexually violent

6

convictions involving children. Mother stated she would explain the situation to B.S. when he was old enough to understand, and B.S. would be free to develop a relationship with his father when he turned 18 years old. The district court found Father "had minimal contact with the child over the last three years and ten months" and B.S. "has been forsaken and deserted by [Father]."

Viewing the evidence in the light most favorable to Mother as the prevailing party, a rational fact-finder could have found it highly probable by clear and convincing evidence Father abandoned B.S. Father has had minimal contact with B.S. for nearly the entirety of the child's life and, with respect to Father, B.S. was without the care or control necessary for his physical, mental, or emotional health. Thus, the evidence reflects the truth of the facts asserted is highly probable, and the district court correctly found B.S. to be a child in need of care as to Father.

*Father is unfit.*

Father argues there was no evidence he abused or treated B.S. cruelly or inhumanely and the only evidence of unfitness was based on abandonment due to his incarceration. Father acknowledges his lack of contact with B.S. was in part because of his incarceration but also suggests Mother limited, and at times refused, Father's contact with B.S. Father admits he failed to provide child support but suggests he was not "required" to pay it since he was never under court order to do so. Father is mistaken; it is actually his duty to support his child regardless of what is ordered by the court. See *State ex rel. Secretary of Social and Rehabilitation Services v. Bohrer*, 286 Kan. 898, 906, 189 P.3d 1157 (2008) ("Parents have a common-law duty to support their minor children, regardless of any statute imposing such an obligation.").

Parental rights for a child may be terminated only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50

Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014). As provided in K.S.A. 38-2269(a), the district court must find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition" making him or her "unable to care properly for a child," and the circumstances are "unlikely to change in the foreseeable future." A foreseeability assessment is measured in "'child time'" as "children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult." *In re M.S.*, 56 Kan. App. 2d 1247, 1263, 447 P.3d 994 (2019).

In reviewing a district court's termination of parental rights, we view all evidence "'in the light most favorable to the party prevailing below'" to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence that parental rights should be terminated. *In re N.D.G.*, 20 Kan. App. 2d at 20; see *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not reweigh the evidence, assess witness credibility, or redetermine fact questions. *In re B.D.-Y.*, 286 Kan. at 705.

K.S.A. 38-2269(b)-(e) lists nonexclusive factors the district court may rely on to determine a parent is unfit. Any one factor alone may be grounds to terminate parental rights. K.S.A. 38-2269(f). Mother's petition for finding unfitness and termination of Father's parental rights relies upon five statutory factors:

- K.S.A. 38-2269(b)(2)—"conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;"
- K.S.A. 38-2269(b)(4)—"physical, mental or emotional abuse or neglect or sexual abuse of a child;"
- K.S.A. 38-2269(b)(5)—"conviction of a felony and imprisonment;"
- K.S.A. 38-2269(c)(2)—"failure to maintain regular visitation, contact or communication with the child or with the custodian of the child;" and

8

- K.S.A. 38-2269(c)(4)—"failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay."

In separate proceedings, the district court convicted Father in a bench trial of electronic solicitation of a child, aggravated indecent liberties with a child, and rape. Father claims his convictions were on appeal at the time of the termination hearing and, if successful, his conduct or condition *may* change in the foreseeable future. Before the parties submitted their appellate briefs in this case, another panel of this court affirmed Father's convictions, and our Supreme Court denied Father's petition for review. *State v. Schultz*, No. 125,094, 2024 WL 504062, at *1-2 (Kan. App.) (unpublished opinion), *rev. denied* 319 Kan. 836 (2024). There is no question Father sexually abused a child. In fact, the incident took place within a month of B.S.'s birth.

As a result of Father's felony convictions, he is serving a life sentence with a minimum term of 25 years' imprisonment and two consecutive sentences of 186 months' imprisonment. Given Father's sentence, he will not be eligible for parole anytime soon and long past the time B.S. will turn 18.

Father suggests there was no evidence he abused B.S., and the evidence of unfitness was based on his incarceration.

> "[I]ncarceration does not necessarily result in an automatic and exclusive basis for an unfitness finding. Incarceration can be a mitigating or a negative factor in the parent's continued ability to parent their child. The facts of each case dictate how the court should view the incarceration of a parent. [Citations omitted.]" *In re T.H.*, 60 Kan. App. 2d 536, 548, 494 P.3d 851 (2021).

In *In re T.H.*, another panel of this court reversed the district court's finding of unfitness and termination of the father's parental rights solely based on his incarceration.

There, the child was "thriving" in the father's care until the father was incarcerated. 60 Kan. App. 2d at 536. Even then, the father arranged for appropriate care of the child during his incarceration, continued to financially support the child while in prison, and maintained regular contact with the child.

Here, Father fails to acknowledge the other factors the district court relied on in finding him unfit, including the reason for his convictions—sexual abuse of another child. In addition to Father's incarceration, the district court found Father "has had minimal contact with the child, has not provided any care for the child since he was three weeks old, and has not provided any support to the child." The district court stated it put little weight on Father's excuses as to why he made no real attempt to contact or communicate with Mother or the child, and Mother's actions did not prevent Father from contacting her or B.S. The district court found the limited contact Father had over a three-year period was incidental—evidence we do not reweigh or reassess. See *In re B.D.-Y.*, 286 Kan. at 705.

Clear and convincing evidence supports the district court's findings of Father's unfitness by reason of conduct or condition making him unable to care properly for B.S., who, at the time of the termination hearing, had barely had any interaction with Father for nearly four years. Father's circumstances are unlikely to change in the foreseeable future, given his lengthy prison sentence, particularly when viewed in "'child time.'" See *In re M.S.*, 56 Kan. App. 2d at 1263.

Father claims, with respect to the foreseeability of his future circumstances, he can still have meaningful contact with B.S. while incarcerated, especially as B.S. gets older, so long as Mother does not prevent contact. But Father fails to acknowledge his minimal effort to contact or communicate with B.S. in the first four years of the child's life. And, as stated above, the district court put little weight on Father's excuses and found Mother's actions did not prevent Father from contacting her or B.S. The district court was

permitted to consider Father's "past conduct as an indicator of future behavior." See *In re M.S.*, 56 Kan. App. 2d at 1264. Viewing the evidence in the light most favorable to Mother, a rational fact-finder could have found it highly probable by clear and convincing evidence that Father's parental rights should be terminated.

*Terminating Father's parental rights is in the best interests of B.S.*

As noted above, Father argues Mother prevented him from having meaningful contact with B.S. and claims he can still have a meaningful relationship with B.S. despite his incarceration—particularly as B.S. gets older and can participate in video and telephone calls.

Upon making a finding of unfitness of the parent, the district court "shall consider whether termination of parental rights . . . is in the best interests of the child. In making the determination, the court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 38-2269(g)(1). The district court makes the best-interests determination based on a preponderance of the evidence, which is essentially entrusting the district court to act within its sound judicial discretion. See *In re R.S.*, 50 Kan. App. 2d at 1115-16.

A district court abuses its discretion "when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error." 50 Kan. App. 2d at 1116. Father, as the party asserting the district court abused its discretion, bears the burden of showing such abuse of discretion. See *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024).

Here, the district court found Father unfit, as discussed above, under K.S.A. 38-2269(b)(2), (b)(4), and (b)(5), as Father was imprisoned for three sexually violent crimes, two of which involved children, and was sentenced to life in prison with no eligibility for

11

parole in the foreseeable future and apparently long past the time B.S. will be an adult. The district court also based its finding of unfitness on Father's lack of communication and support under K.S.A. 38-2269(c)(2) and (c)(4).

The district court considered the child's emotional, physical, and mental well-being and found it was in the child's best interests to terminate Father's parental rights. Given the nature of Father's convictions and his lack of financial support, contact, or communication with B.S., the district court did not abuse its discretion in finding it was in B.S.'s best interests to terminate Father's parental rights.

Affirmed.